[Civ. No. 14796.   Second Dist., Div. Two.   May 14, 1945.]

E. S. KENDRICK, Appellant, v. SIDNEY L. SCHWARTZ et al., Respondents.

Lyndol L. Young for Appellant.

O'Melveny & Myers, Pierce Works and L. M. Wright for Respondents.

WOOD (W. J.), J.—Plaintiff sought to recover a judgment in the sum of $7,440, damages which he claims to have suffered because of the fraudulent representations and deceit of defendants' agent in the purchase of 2,000 shares of corporate stock of Menasco Manufacturing Company. The trial court rendered judgment in favor of defendants, from which plaintiff has appealed.

Defendants are stock brokers maintaining offices in Los Angeles and San Francisco, doing business under the firm name of Sutro & Co. After conversations with defendant Joyce, who was agent for the other defendants, plaintiff purchased 2,000 shares of the capital stock of Menasco Manufacturing Company on December 23 and 30, 1938, at prices ranging from four and one-eighth to five and one-eighth dollars per share. In his complaint plaintiff alleged that a number of false representations concerning the financial condition of Menasco Company were made by the agent of defendants for the purpose of inducing him to purchase the stock; that defendants were manipulating the price of the Menasco stock; that defendants concealed certain important facts from plaintiff concerning the dealings of the Sutro partners in the Menasco stock; that the Menasco Company was insolvent at the time of plaintiff's purchase and that its insolvency was known to defendants; that the stock was not worth more than $1.00 per share. Plaintiff asked for judgment in the amount paid by him for the stock over and above the sum of $1.00 per share.

All of the allegations concerning fraud and concealment were denied by defendants and the trial court found all of these issues in their favor. The court also found that the stock purchased by plaintiff was acquired in the open market and not from the partners or the customers of defendants. The trial court further found that plaintiff did not suffer any damages whatever because of the purchase of the stock and that "the actual value of the 2000 shares of Menasco Manufacturing Company stock purchased by plaintiff was not less than the amounts paid therefor by plaintiff at the time of said purchases."

On this appeal plaintiff contends that the findings are not supported by the evidence. Defendant Schwartz, senior partner of Sutro and Co., testified that in his opinion the Menasco stock was worth $5.50 per share on December 30,

1938. He further testified: "A. We form an opinion of the value of a stock largely by what it will bring. A thing is worth as much as it will bring, and here was a stock that in December some in excess of 100,000 shares of stock were sold and at prices varying from $4.40 to as high as $5.75. Well, certainly that must be taken in part as a yardstick to appraise the value of the stock. Certainly to a man holding a small block of stock like 2,000 shares it would be an indication what he could sell 2,000 shares for. There would be no mishap in disposing of it on the market. It would bring just what the market is. As far as balance sheet values, of course we like to look at balance sheets, we like to look at earnings, but we have to weigh the future prospects of a company because a stock, in my opinion, the value of a stock is a reflection of what it is going to do, not what it is but what are its prospects, what can be done with the company, what developments are there coming forth that will make the stock worth more in the public mind and push it up. A person who buys stocks buys stocks very largely with a speculative view of selling it at a higher price than he obtained it at. Therefore, my idea of the value of a stock is, firstly what will it bring; secondly we have to disregard book values because look at these tremendous plants in the east that have their plants written down at one dollar. They wouldn't sell it at book value. They would sell it at appraised value and the purchaser would pay something for what he thinks the stock of a company will produce *in futurum,* what it is going to earn, not today."

In answer to the question, "Well what brought the public in?" the witness answered: "The prospects of the company, the fact that it had Lockheed management, the fact that Lockheed had received large European orders, the fact that the Covic engine at that time looked as if it were to be a success, the fact that the whole prospect for the company had changed from a small company to a company that was going to grow into a very large operation, as it has done, all of which prospects were justified."

The witness Cyril Chappelet testified that he is a director of Lockheed Aircraft Corporation and also a director of Menasco Company. He stated that in his opinion in December of 1938 the business prospects of the Menasco Company were good. He further testified: "The Menasco Company had a

development contract with the Lockheed Aircraft Corporation to develop what was called a unitwin power plant. This consisted of taking two of Menasco's in-line engines and hooking them together through a free wheeling device to a single propeller. The Lockheed Aircraft Corporation was vitally interested in this development and had started the design of an airplane in which this particular engine hookup would be incorporated. I believed that the prospects for the sale of that airplane and consequently the engines were excellent. In addition, Menasco Company's principal business was that of designing and manufacturing training engines, engines which were suitable for installation in training airplanes of the type used by our government and other nations. With the quickening of war conditions in the European theatre there was a decided interest on the part of not only the United States Government but other countries in training planes, as well as tactical planes, and I felt that the Menasco engine might very well play an important part in the training program throughout the world, at least in those nations in which we had sales contacts, and at that time the Menasco Company had developed some foreign contacts as well as domestic. In addition, the Menasco Company at that time had undertaken a contract with the Northhill Company to build a quantity of small diesel engines. As I recall that contract at that time was either 1000 or 1500 engines. We believed and I believed at that time that this would result in profitable and sustained business for the Menasco Company. Furthermore, as I recall, the Menasco Company at that time had taken or made a license agreement with the Antioch Casting Company, or whatever its name was, it was associated with the Antioch College, to produce castings by a novel process. It appeared to me that that had promise of good development for the Menasco Company. With those four principal sources of business, plus the miscellaneous machine shop type of business which the Menasco Company obviously was in a position to acquire from other companies who desired to do sub-contracting, or rather, to farm out their machine shop work, I came to the personal conclusion that the Menasco Company's business prospects were good.''

It appears from the testimony quoted above that in December of 1938 Menasco Manufacturing Company stock was selling at a price at times even higher than the price

paid by plaintiff. But the market value of the stock, while being competent evidence of its value, is not the criterion to be followed by the court. It is provided in section 3343 of the Civil Code that one who is defrauded in the purchase of property is entitled to recover "the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received. . . ." The value of corporate stock is to be determined by the worth of the corporate assets rather than by the market value of the stock. (*Zinn* v. *Ex-Cell-O Corp.*, 24 Cal.2d 290, 297 [149 P.2d 177]; note in 57 A.L.R. 1153.) ▮ The future prospects of Menasco Manufacturing Company and the fact that Lockheed directors had become directors of Menasco were proper elements for the court to consider in determining the value of the stock which plaintiff had purchased. It is apparent that the testimony above quoted gives ample support to the finding of the trial court that the actual value of the shares purchased by plaintiff was not at the time of purchase less than the amount paid for the stock.

Since the finding on the element of damages is supported by the evidence it is manifest that plaintiff is not entitled to recover a judgment against defendants. Discussion of other issues is unnecessary.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied May 25, 1945, and appellant's petition for a hearing by the Supreme Court was denied July 12, 1945.