[Civ. No. 9233.   Third Dist.   Oct. 20, 1958.]

KENNETH HAUSSLER et al., Respondents, v. WARNER WILSON, Appellant.

E. L. Means, Oliver J. Northup, Jr., Rodegerdts & Means, Eugene S. Clifford, Donald B. Falconer and Heller, Ehrman, White & McAuliffe for Appellant.

Pierce & Brown for Respondents.

VAN DYKE, P. J.—Respondents began this action to obtain a decree declaring rescinded a transaction whereunder appellant had purchased from them five shares of the capital stock of the Bank of Davis. The judgment granted this relief, and the court denied a motion for a new trial. This appeal followed.

By their complaint respondents alleged that the sale of the shares of stock had been induced by fraudulent representations made to them by appellant. The trial court found these allegations to be true. Appellant's attack on the judgment raises the single issue of the sufficiency of the evidence to support these findings.

The findings may be summarized as follows: Respondents were the owners jointly of five shares of the common capital stock of the bank. Appellant was a director and its manager. During the period here involved the total number of issued and outstanding common shares was 250. Respondents, on May 2, 1953, sold their shares to appellant for $300 per share. During the negotiations for the sale appellant made certain representations which were false, fraudulent, untrue and were known by him to be so. Appellant represented to respondents that the actual reasonable value of the shares was materially less than $300 per share, but that he was willing to pay $300 per share because certain persons were challenging the control of defendant and his associates of a majority of shares. Respondents' shares were, therefore, needed by appellant in order to strengthen his position in the corporation. The shares were then of an actual and reasonable value of $887.24 per share. Appellant represented that the bank was not earning sufficient profits with which to pay substantial dividends. In fact, the bank had earned large profits sufficient to enable it to declare a 100 per cent stock dividend, which was done soon after the sale, and appellant knew the directors had already decided to declare the stock dividend but concealed that knowledge from respondents. Appellant had been negotiating for the purchase of other shares of the bank, one block of stock being one for which the owner had demanded $500 per share and another lot being one in which a tentative sale to appellant had been cancelled. The bank had built up reserves from earnings sufficient to retire its preferred shares and to build up its paid in capital by $25,000 transferred from reserves and to build up a surplus by transferring $55,000 from unallocated reserves to paid in surplus. These steps were taken within a month after respondents sold their

stock to appellant. Appellant concealed this information as to the bank's condition from respondents during his negotiations with them for the purchase of their stock.

The court found that appellant had at all times voluntarily assumed and occupied toward all of the shareholders of the bank, including respondents, a relation of personal confidence and by reason thereof was a trustee of a trust in which the shareholders, including respondents, were beneficiaries; that in all matters connected with said trust, appellant was bound to act in the highest good faith toward respondents, but notwithstanding made said misrepresentations and concealed the matters hereinabove before found, and thus obtained and gained an advantage adverse to respondents in violation of his trust; that by reason thereof respondents were induced to enter into the contract of sale and to sell the shares to appellant and did so under the undue influence of appellant.

There is evidence of the following facts: The families of the parties have been residents of the Davis community for many years. Kenneth Haussler, who was 30 years of age at the time of the transactions involved here, had known appellant all his life. Appellant had been connected with the bank since 1929. Respondents' uncle, George Haussler, had for a long time prior to his death been a director and shareholder, and when he died the five shares here involved were a part of his estate, and were purchased through probate sale by respondents. They paid $150 per share. Kenneth is a farmer. He and his father before him had always banked with the Bank of Davis, and Kenneth had done no business through any other bank. Appellant had acted as financial adviser for Kenneth's father and for Kenneth. The families had been quite friendly for a long time. At the time of the sale the common stock of the bank was closely held. One hundred and twenty-two shares were owned or controlled by appellant and his aunt. Acquisition of respondents' five shares would give appellant and his aunt voting control of the corporation. Thirty-one shares were held by a trustee for the Bank of America or Transamerica. A Mrs. Flaherty held 16 shares. One Brinley, through his son, wife and brother-in-law, held 36 shares, and four family groups and individuals owned the balance. Before respondents sold their stock to appellant, Brinley purchased the Transamerica and Flaherty shares. When respondents sold to appellant, their five shares appeared to be the only shares available and if appellant could obtain them he and the interests he was working with would have

voting control. If Brinley got them the voting control would shift.

Under the foregoing circumstances appellant began dealing with the Hausslers for their stock. The sale was the result of three conferences. The first occurred on the Haussler farm when appellant went there and talked to Kenneth. Between the second conference and the last appellant phoned the Hausslers several times, urging them to sell. The Hausslers went to the bank for the purpose of telling appellant they would not sell. They told him that their shares had been in the family a long time; that they liked to be a part of the organization they were doing business with. Responsive to appellant's statement that he was threatened with loss of control of the bank the Hausslers offered to "lend" him their shares. They told him they would vote the shares with him. His reply was that the only way he could be secure in his position was to purchase the shares outright. He told them the shares were not a particularly good investment, not very valuable and were paying a very low dividend. He offered them $300 a share, stating it was more than the shares were worth, was twice their value, but that because he wanted control of the bank he was willing to pay that price. He told them that the book value did not enter into the market price of stock. Finally he said that in the near future there would be additional shares available and he promised the Hausslers that they could then buy shares in the bank and again become shareholders and that he would see that stock was made available to them to replace the shares they were selling. The Hausslers sold.

To establish the value of the shares, respondents called to the stand one Addison G. Strong. To qualify himself as an opinion witness on value, he testified that he was a certified public accountant and had been such for 40 years, was a graduate of the University of California with the class of 1910, having majored in what is now called business administration; that he was a member of the American Institute of Accountants, of the State Society of Certified Public Accountants, and of the National Association of Cost Accountants. He said he had done general work involving banks along financial organizational lines; that over a number of years he had made an examination of a number of banks, some fairly large; that the assets of the banks he had examined ran from half a million dollars up to five hundred million; that he had done auditing in respect of such banks for boards

of directors and that his work had involved going into the affairs of these banks with great particularity to determine their condition; that he had made a report with reference to the condition of the Bank of Davis as of the date the shares were sold to appellant. He said he had considered two published reports, one of June 30 and one of December 31, 1952, covering the examination of the Bank of Davis by the State Superintendent of Banks; that these reports contained a statement of assets and liabilities in some detail with a recitation of the breakdown of certain of the assets and liabilities, the list of securities and their evaluation. He had examined analyses covering such items as the bank's premises, its earnings and reserves. He had examined the bank's income tax returns for the years 1950 to and including 1953. This witness arrived at a book value of $887.24 per share. We think it is unnecessary to go into the details of his testimony wherein he substantiated his result. Appellant challenges his results and his methods; respondents defend them. We deem it unnecessary to repeat their arguments. Unquestionably the testimony of Mr. Strong supports a conclusion that the book value of the shares at least approached fairly closely the value the witness gave as above stated. In this respect it might be noted that the witness in his appraisal of net worth of the shares added nothing for good will, although pointing out that in evaluating the stock of a closely held corporation some amount could have been added for good will in determining actual value. The record supports the finding of the trial court that when appellant told the Hausslers their shares were worth about $150 each he grossly misrepresented the real value of the shares. He was chargeable at the time with knowledge of the book value and of the fact that in some material respects the book value did not reflect the whole of the real value. In the case of a closely held corporation book value is a very material factor in ascertaining real value, yet when the Hausslers asked him about book value his reply was that it had little to do with market value. By thus brushing aside respondents' request for information which in his position as manager of the bank and director he must have had, appellant effectually concealed that which the testimony of the witness Strong revealed. ▪ As stated in *County Nat. Bank etc. Co.* v. *Sheppard,* 136 Cal.App.2d 205, 213 [288 P.2d 880]:

"The method now generally sanctioned and adopted for valuing stock in a closely-held corporation whose stock is un-

listed, and where there have been no sales, consists of ascertaining 'the value of the property which they represent, assigning to each share its proportionate worth.' "

The test in such a case as we have before us is stated in this way in *Trebelhorn* v. *Bartlett,* 154 Neb. 113 [47 N.W.2d 374, 379] :

"The actual value of corporate stock which has no market value, that is, where it is all common stock closely held and not listed or actively traded in on any stock exchange, as in the case at bar, is ordinarily determinable from the then net worth of the corporation divided by the number of bona fide shares issued and outstanding. For that purpose, evidence of the factors and elements, such as assets, liabilities, and all other matters pertinent to the value of the particular corporation involved, may be admitted and considered." (To the same effect see *Kendrick* v. *Schwartz,* 69 Cal.App.2d 171 [158 P.2d 405] ; *Gorham* v. *Massillon Iron & Steel Co.,* 284 Ill. 594 [120 N.E. 467] ; *Arneson* v. *Nerger,* 34 S.D. 201 [147 N.W. 982] ; 31 C.J.S. Evidence, § 183, p. 901.)

The evidence herein brought appellant squarely within the scope of the rule declared in *Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, 433 [159 P.2d 958] :

"Under the 'special facts' doctrine a corporate officer owes a limited fiduciary duty in transactions with a shareholder involving the transfer of stock. The confidential relationship arises as a result of the officer's possession of special knowledge gained in his capacity as a corporate fiduciary. An officer, in buying or selling to a shareholder, must inform him of those matters relating to the corporate business of which the officer has knowledge and which the shareholder has a right to know about, so that the latter may have the benefit of such information in judging the advantages of the deal. Once such disclosure is made, the officer has fulfilled his duty under this doctrine, and the resulting bargain is not subject to disaffirmance on the ground of unfairness to the shareholder. But without such disclosure the fiduciary duty of the officer in such a situation is not discharged."

It is unnecessary to discuss the findings other than those which show fraudulent representations and fraudulent concealment in connection with the value of respondents' shares. We have examined the record closely and think that, with perhaps minor exceptions, the trial court's findings as to other fraudulent representations are supported. But even if they were not the judgment would still have to be upheld

because of the misrepresentations and wrongful concealment the court found as to value. ▮ As said in *Hobart* v. *Hobart Estate Co., supra,* page 422:

"In general, to establish a cause of action for fraud or deceit plaintiff must prove that a material representation was made; that it was false; that defendants knew it to be untrue or did not have sufficient knowledge to warrant a belief that it was true; that it was made with an intent to induce plaintiff to act in reliance thereon; that plaintiff reasonably believed it to be true; that it was relied on by plaintiff; and that plaintiff suffered damage thereby."

▮ The evidence in this case measures up to the foregoing test and the judgment appealed from must be affirmed.

▮ Appellant moved for a new trial upon the ground of newly discovered evidence and his motion was denied. He now claims an abuse on the part of the trial court in denying that motion. Mrs. Haussler had testified concerning the representations made to herself and her husband by appellant during negotiations leading up to the sale of their stock to him. After the trial was over she wrote him a letter reading as follows:

"Dear Warner

"Quite a little bit sadder and wiser than last week I am writing this note to say that I'm sure what you did was in good faith.

"By the same token all I care about is the rescinding of the shares and a more equal distribution of the management of the bank by the shareholders.

"Kenneth and I, as you probably realize, went into this on principle.

"May I say I have found you a worthy opponent."

She also wrote a letter to a mutual acquaintance, one Virginia S. Dixon, reading as follows:

"Dear Mrs. Dixon,

"This note is to apologize for an oversight of mine in the witness chair, yesterday. In my concentration on the dates in dispute, namely October 1950 to May 1953, I forgot about our pleasant and mostly earlier association in the Eastern Star. I'm sorry.

"I did so hope this would be settled between the two families out of Court. Since this could not be, I had no choice but to sustain the principles in which I believe."

Noting that the action was based upon the bad faith of ap-

pellant in procuring respondents' stock, her post-trial assertions to him that she was sure that he had been acting in good faith are declared by appellant to constitute newly-discovered evidence which could not have been presented by him at the trial even with the exercise of the greatest diligence. The letters, says appellant, not only absolve him of fraud but admit special motives in connection with the litigation apart from a single desire to recover for damages claimed to have been inflicted through the alleged fraud. Mrs. Haussler filed an affidavit in opposition to the motion for new trial. She said that when she wrote to appellant that she was sure what he had done had been done in good faith and that she was trying to patch up the unhappy unpleasantness of the trial, she had been trying to be charitable; that she had tried to think that appellant in doing what he had done had wanted to obtain the Haussler shares so badly he had even rationalized his own conduct and behavior to himself; that she meant only to imply such rationalization by appellant to his own conscience; that in all she had said at the trial she had testified truly. It is to be observed that Mrs. Haussler's statement that she was sure appellant had acted in good faith in what he had done is conclusionary in nature. If she and the others had testified truly as to the facts it was the business of the trial court to draw the conclusion of good or bad faith. Mrs. Haussler did not testify, and probably would not have been permitted to testify, as to any opinion she might have held concerning good or bad faith. Notwithstanding her post-trial statements, the trial court in passing upon the motion could not in good conscience grant it if the court was still of the opinion that appellant had acted in bad faith. The court's denial of the motion indicates that such was the opinion of the court.

The judgment appealed from is affirmed.

Peek, J., and Warne, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 17, 1958.

---

*Assigned by Chairman of Judicial Council.