22 Cal.App.3d 721 (1972)
99 Cal. Rptr. 488
THOMAS J. SANTORO, Plaintiff and Respondent,
v.
THERESA M. CARBONE, Defendant and Appellant.
Docket No. 38310.
Court of Appeals of California, Second District, Division Four.
January 6, 1972.
*725 COUNSEL
Broun, Norris, King, Graaskamp & Lancefield and Bernard M. King for Defendant and Appellant.
James B. Gentry for Plaintiff and Respondent.
*726 OPINION
DUNN, J.
Plaintiff commenced an action to quiet title to real property conveyed by grant deed dated March 24, 1965, to plaintiff and defendant as joint tenants. In the complaint it was alleged that plaintiff had purchased the property and caused title to be placed in the names of the parties as joint tenants, in reliance on defendant's false representation that if plaintiff did so defendant would remarry him. Defendant filed an answer alleging as a purported affirmative defense (1) that the complaint did not state facts sufficient to constitute a cause of action, and, as a further affirmative defense, (2) that plaintiff was estopped to claim false representations on the part of defendant because when the property was purchased plaintiff was married to another woman. Defendant also filed a cross-complaint seeking partition of the property and an accounting of rents collected by plaintiff.
The action was tried without a jury. Explanatory evidence was introduced showing: plaintiff and defendant were married in Massachusetts in September 1945, and had two children. In 1960 the family moved to California. The parties were separated in 1963. Defendant then went to Massachusetts where she commenced an action to divorce plaintiff on February 19, 1963. The final decree was entered August 20, 1963, and on August 31st defendant and James Carbone were married in Massachusetts. Thereafter defendant returned to California, accompanied by Mr. Carbone. In December 1964 she separated from him briefly and went to live with plaintiff and their two children in an apartment. Plaintiff had married Harriet Santoro in November 1963, but had obtained an interlocutory decree of divorce from her by the time defendant began living with him and the children. Plaintiff expected his final decree to be entered in July 1965.
Findings of fact and conclusions of law were signed and filed. The court found: defendant falsely represented to plaintiff that she would remarry him if he purchased the house and had title placed in the names of the parties as joint tenants; defendant knew such representation was false, but plaintiff believed it was true and in reliance thereon entered into a contract to purchase the house and had title placed in joint tenancy; had plaintiff known the true facts he would not have taken such action; the parties lived together in the house for less than two months and then defendant moved out and immediately returned to her second husband; after leaving, defendant did not request an accounting of rents until she filed her answer and cross-complaint and, except for demanding $2,000 to execute a quitclaim deed, she made no claim upon the property; defendant contributed $200 toward the purchase price, but plaintiff made all other payments on the property; plaintiff was damaged by defendant's fraud in that he was induced *727 to place title in joint tenancy with defendant when he otherwise could have purchased the property in his name, alone; defendant was not entitled to a partition of the property or to an accounting of rents collected.
The court concluded that because of defendant's fraud, she had no right, title or interest in the property, but that she was entitled to restitution of $200 representing her contribution toward the purchase price. Judgment was entered decreeing that plaintiff was the owner in fee simple of the property, quieting title in him, enjoining defendant from asserting any claim to the property, and ordering plaintiff to pay defendant $200.
Defendant appeals from the judgment. (1a) She contends, first, that there was no evidence to support two findings necessary to establish fraud, viz., (1) that defendant made false representations by telling plaintiff she would remarry him if he purchased the property in their name, (2) when she had no intention of doing so. (See: Hobart v. Hobart Estate Co. (1945) 26 Cal.2d 412, 422 [159 P.2d 958]; Haussler v. Wilson (1958) 164 Cal. App.2d 421, 428 [330 P.2d 670]; Anderson v. Handley (1957) 149 Cal. App.2d 184, 186 [308 P.2d 368].)
As to the making of the false representation, plaintiff testified that defendant said she would remarry him if he purchased a house. She never did remarry him and could not, for, after divorcing plaintiff, she had married Carbone and remained so married, never having sought a divorce from him.[1] This constituted substantial evidence supporting the findings; the fact part of such evidence was contradicted by defendant's testimony is immaterial. (Green Trees Enterprises, Inc. v. Palm Springs Alpine Estates, Inc. (1967) 66 Cal.2d 782, 784 [59 Cal. Rptr. 141, 427 P.2d 805]; Crawford v. Southern Pacific Co. (1935) 3 Cal.2d 427, 429 [45 P.2d 183]; Tucker v. Beneke (1919) 180 Cal. 588, 591 [182 P. 299]; Quindt v. Kilpatrick (1950) 96 Cal. App.2d 824, 826 [216 P.2d 481].) (2) Since direct proof of fraudulent intent is often impossible, the intent may be established by inference from acts of the parties. (Fross v. Wotton (1935) 3 Cal.2d 384, 393 [44 P.2d 350]; Estate of Newhall (1923) 190 Cal. 709, 721 [214 P. 231, 28 A.L.R. 778]; Maxson v. Llewelyn (1898) 122 Cal. 195, 198 [54 P. 732]; Bohn v. Watson (1954) 130 Cal. App.2d 24, 33-34 [278 P.2d 454]; Taylor v. Osborne-Fitzpatrick Fin. Co. (1943) 57 Cal. *728 App.2d 656, 661 [135 P.2d 598]; Palladine v. Imperial Valley F.L. Assn. (1924) 65 Cal. App. 727, 753 [225 P. 291].) (1b) The subsequent failure to perform as promised warrants the inference that defendant did not intend to perform when she made the promise. (Longway v. Newbery (1939) 13 Cal.2d 603, 611-612 [91 P.2d 110]; Boyd v. Bevilacqua (1966) 247 Cal. App.2d 272, 292 [55 Cal. Rptr. 610]; Kejr v. Construction Engineers, Inc. (1954) 128 Cal. App.2d 396, 400 [275 P.2d 529]; Grant v. U.S. Electronics Corp. (1954) 125 Cal. App.2d 193, 199-200 [270 P.2d 64]; Jarkieh v. Badagliacco (1946) 75 Cal. App.2d 505, 509 [170 P.2d 994]; Klutts v. Rupley (1943) 58 Cal. App.2d 560, 563 [137 P.2d 496]; Estate of Barrow (1938) 27 Cal. App.2d 402, 405 [80 P.2d 1006].) The evidence established that less than two months after the house was purchased and the parties moved in, defendant left plaintiff and returned to her second husband. Defendant's conduct supports the finding that when she told plaintiff she would remarry him her representation was false.
(3) Defendant correctly states that fraud must be proved by clear and convincing evidence. (Aggregates Associated, Inc. v. Packwood (1962) 58 Cal.2d 580, 588 [25 Cal. Rptr. 545, 375 P.2d 425]; Evid. Code, § 115.) But it is the function of the trial court, not the reviewing court, to determine whether that standard has been met, and the trial court's determination of the issue is conclusive where, as here, it is supported by substantial evidence. (Boyd v. Bevilacqua, supra, 247 Cal. App.2d at pp. 292-293; Gold v. Maxwell (1959) 176 Cal. App.2d 213, 218 [1 Cal. Rptr. 226].)
The remainder of defendant's argument on this phase of the appeal is devoted to a discussion of inferences which could be drawn from evidence showing honesty and fair dealing on the part of defendant. However, it was the exclusive province of the trial court to determine which of two or more reasonable inferences should be drawn; and its findings, based on the inferences drawn, cannot be disturbed on appeal. (Maslow v. Maslow (1953) 117 Cal. App.2d 237, 243 [255 P.2d 65].)
(4a) Defendant next contends the judgment must be reversed because there was no evidence to support the finding that plaintiff was damaged as a result of the fraud. Defendant apparently assumes there was no damage because it was not shown that the property had depreciated in value or that the rents collected by plaintiff were less than the amount of the mortgage payments he was required to make.
(5) In an action to recover damages for fraud, the plaintiff must allege and prove the precise amount of his damages. (Munson v. Fishburn (1920) 183 Cal. 206, 216 [190 P. 808].) The instant action, however, was not one to recover damages but was an equitable suit to quiet title; it was *729 akin to an action for rescission on the ground of fraud. In such an action, the plaintiff need not plead or prove pecuniary loss so long as the record indicates injury or prejudice resulting from the fraud. (Earl v. Saks & Co. (1951) 36 Cal.2d 602, 611 [226 P.2d 340]; Hefferan v. Freebairn (1950) 34 Cal.2d 715, 721 [214 P.2d 386]; Munson v. Fishburn, supra, 183 Cal. at p. 216.)
(4b) The court found that plaintiff was damaged because he had been induced by defendant's fraud to place title to the property in joint tenancy.[2] (6) Where property is held in joint tenancy, upon the death of one joint tenant the survivor becomes the sole owner in fee by right of survivorship and no interest in the property passes to the heirs, devisees or personal representatives of the joint tenant first to die. (In re Kessler (1932) 217 Cal. 32, 34 [17 P.2d 117]; People v. Nogarr (1958) 164 Cal. App.2d 591, 593 [330 P.2d 858, 68 A.L.R.2d 992]; Cole v. Cole (1956) 139 Cal. App.2d 691, 694 [294 P.2d 494]; Plante v. Gray (1945) 68 Cal. App.2d 582, 588 [157 P.2d 421].) (4c) Hence, the joint tenancy was prejudicial to plaintiff because if he predeceased defendant, who was not his wife and could not become such, she would acquire title to the property to the exclusion of plaintiff's heirs or devisees, regardless of their relationship to plaintiff.
(7) Moreover, a joint tenant may sell or encumber only his own interest in the property held in joint tenancy. (Estate of Harris (1937) 9 Cal.2d 649, 659 [72 P.2d 873]; Los Angeles Lighting Co. v. City of Los Angeles (1895) 106 Cal. 156, 159-160 [39 P. 533]; People v. Marshall (1857) 8 Cal. 51; Thompson v. Thompson (1963) 218 Cal. App.2d 804, 807 [32 Cal. Rptr. 808]; Haster v. Blair (1940) 41 Cal. App.2d 896, 898 [107 P.2d 933].) (4d) Therefore, plaintiff was damaged for the further reason that although he, alone, maintained the property and made all of the required payments, he could sell or encumber only a portion of it and hence, for all practical purposes, could not sell or encumber it at all. The evidence showed that in 1967 plaintiff, undoubtedly realizing this, requested that defendant execute a quitclaim deed of her interest in the property, but she refused to do so unless plaintiff paid her $2,000.
We conclude there was substantial evidence to support the finding that plaintiff was damaged by defendant's fraud.[3]
*730 (8a) Defendant further contends the trial court committed reversible error in refusing to make a finding on the "material" issue of estoppel, which was pleaded as an affirmative defense. The theory of this defense was that plaintiff was estopped to complain of defendant's inability to marry him because he, too, was married to another person, and thus could not have married defendant.
(9) Four elements are essential to raise an equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. (Granco Steel, Inc. v. Workmen's Comp. App. Bd. (1968) 68 Cal.2d 191, 203 [65 Cal. Rptr. 287, 436 P.2d 287]; Driscoll v. City of Los Angeles (1967) 67 Cal.2d 297, 305 [61 Cal. Rptr. 661, 431 P.2d 245]; Crestline Mobile Homes Mfg. Co. v. Pacific Finance Corp. (1960) 54 Cal.2d 773, 778 [8 Cal. Rptr. 448, 356 P.2d 192].) If estoppel is to be relied upon as a defense these elements must be pleaded and proved. (Miller v. Rau (1963) 216 Cal. App.2d 68, 79-80 [30 Cal. Rptr. 612].) (8b) They were not pleaded but, more significantly, as to proof, plaintiff testified that he told defendant he had obtained an interlocutory decree of divorce from his second wife and that he would not be free to remarry defendant until the decree became final. Defendant testified she knew plaintiff was married and that he was in the process of obtaining a divorce. Hence, at least one element of estoppel was not established. (10) It follows that if the trial court had made a finding on this issue it would have been against defendant; and a party may not complain of the failure to make a finding which would necessarily have been adverse to him. (Xum Speegle, Inc. v. Fields (1963) 216 Cal. App.2d 546, 558 [31 Cal. Rptr. 104]; De Martini v. Department of Alcoholic Beverage Control (1963) 215 Cal. App.2d 787, 814 [30 Cal. Rptr. 668], overruled on other grounds in Harris v. Alcoholic Bev. etc. Appeals Bd. (1965) 62 Cal.2d 589, 596 [43 Cal. Rptr. 633, 400 P.2d 745]; London Guar. & Acc. Co. v. Las Lomitas School Dist. (1961) 191 Cal. App.2d 423, 426 [12 Cal. Rptr. 598]; Pry Corp. of America v. Leach (1960) 177 Cal. App.2d 632, 637 [2 Cal. Rptr. 425].)
(8c) We note further that the court did find generally on material issues raised by the pleadings and presented by the evidence. (11) It is the rule that if findings are made upon issues which determine the cause and uphold the judgment, other issues become immaterial and a failure to find thereon does not constitute prejudicial error. (Leonard v. Fallas (1959) 51 Cal.2d 649, 653 [335 P.2d 665]; Sharp v. Pitman (1913) 166 Cal. 501, 505 [137 P. 234]; Berk v. Twentynine Palms Ranchos, Inc. *731 (1962) 201 Cal. App.2d 625, 634 [20 Cal. Rptr. 144]; Imperial W. Co. No. 1 v. Irrigation Dist. (1923) 62 Cal. App. 286, 291 [217 P. 88].) For this reason, also, the trial court did not err in refusing to make a finding on the issue of estoppel even though defendant requested such a finding. (Code Civ. Proc., § 634; 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, §§ 342, 343, pp. 3144-3145.)
(12) In her brief, defendant-appellant says, "It may well be that the issue should be one of `unclean hands' rather than estoppel." So far as we can ascertain, this is the first time defendant has mentioned the clean hands doctrine; it is not mentioned in the record of the trial proceedings. Unclean hands and estoppel are not the same thing (cf: 4 Witkin, Summary of Cal. Law (7th ed. 1960) Equity, §§ 7, 93, pp. 2791, 2869). "The doctrine of unclean hands must be raised in the trial court to be available as a defense.... `[I]t must be pleaded or called to the attention of the trial court in order that it may pass on the defense and also to permit the person against whom it is sought to be applied the opportunity to present such evidence as might bear on that issue.'" (Marshall v. Marshall (1965) 232 Cal. App.2d 232, 253 [42 Cal. Rptr. 686].) (Also see: Fibreboard Paper Products Corp. v. East Bay Union of Machinists (1964) 227 Cal. App.2d 675, 726 [39 Cal. Rptr. 74]; Moriarty v. Carlson (1960) 184 Cal. App.2d 51, 57-58 [7 Cal. Rptr. 282]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 948, pp. 2527-2528.)
Defendant contends, finally, that a quiet title action was inappropriate because plaintiff sought equitable relief, and therefore the trial court should have sustained the "affirmative" defense that the complaint did not state facts sufficient to constitute a cause of action.[4]
This contention is patently without merit. (13) An action to quiet title is equitable and is governed by equitable principles, and the remedy created by Code of Civil Procedure section 738[5] is equitable where, as here the defendant is not in possession of the land. (Thomson v. Thomson (1936) 7 Cal.2d 671, 681 [62 Cal. Rptr. 358]; Medeiros v. Medeiros (1960) 177 Cal. App.2d 69, 72 [1 Cal. Rptr. 696]; Talbot v. Gadia (1954) 123 Cal. App.2d 712, 720 [267 P.2d 436]; Akley v. Bassett (1924) 68 Cal. App. 270, 285-286 [228 P. 1057].) The relief awarded in such an action may vary according to the circumstances of the case. (Dreher v. Rohrmoser (1955) 134 Cal. App.2d 196, 198 [285 P.2d 285].) But a decree like the one in this case, declaring that plaintiff is the owner of the property and enjoining *732 defendant from further asserting a claim thereto, is a proper form of judgment (Wolf v. Gall (1916) 174 Cal. 140, 145 [162 P. 115]; Goldstein v. Prien (1956) 143 Cal. App.2d 123, 129 [299 P.2d 344]; 41 Cal.Jur.2d 501, Quieting Title, Etc., § 32), and such relief was warranted by the pleadings and the proof.[6]
(14) It is true that an action to quiet title cannot be maintained by the owner of an equitable interest as against the holder of a legal title. (G.R. Holcomb Estate Co. v. Burke (1935) 4 Cal.2d 289, 297 [48 P.2d 669]; Chase v. Cameron (1901) 133 Cal. 231, 234 [65 P. 460]; South v. Wishard (1954) 123 Cal. App.2d 642, 653 [267 P.2d 827].) However, that principle does not apply here because plaintiff had a legal title, not merely an equitable interest in the property.
(15a) Another aspect of the case, however, must be discussed even though not raised by either party. Thus, the record shows that after plaintiff had obtained an interlocutory divorce from his second wife, he promised to remarry defendant. Although defendant also had remarried and had not commenced divorce proceedings against her second husband, she promised to remarry plaintiff if he purchased a house for the family. (16) This raises the question whether the transaction was against public policy. If it was, it could not properly be made the foundation of any action, either in law or in equity. (Chateau v. Singla (1896) 114 Cal. 91, 94 [45 P. 1015]; Stockton Morris etc. Co. v. Calif. etc. Corp. (1952) 112 Cal. App.2d 684, 689 [247 P.2d 90]; Hooper v. Barranti (1947) 81 Cal. App.2d 570, 574 [184 P.2d 688].)
Even though the parties did not plead illegality or raise the issue in the trial court, if the case made out by plaintiff or defendant shows illegality, it becomes the duty of this court, sua sponte, to refuse enforcement of the transaction. (Lewis & Queen v. N.M. Ball Sons (1957) 48 Cal.2d 141, 147-148 [308 P.2d 713]; Fewel & Dawes, Inc. v. Pratt (1941) 17 Cal.2d 85, 92 [109 P.2d 650]; Precision Fabricators, Inc. v. Levant (1960) 182 Cal. App.2d 637, 642 [6 Cal. Rptr. 395]; Tevis v. Blanchard (1954) 122 Cal. App.2d 731, 733 [266 P.2d 85]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, §§ 918, 919, pp. 2503-2506.) (17) This is in keeping with the general rule that equity will not aid the parties to an illegal transaction *733 where they are in pari delicto, but will leave them where it finds them, to settle their differences without the aid of the court. (Colby v. Title Ins. and Trust Co. (1911) 160 Cal. 632, 640 [117 P. 913]; 18 Cal.Jur.2d, Rev., Equity, § 25, p. 161.)
(18) A promise of marriage made by or to a person who, to the knowledge of the parties, then has a spouse living is absolutely void in its inception as against public policy and cannot give rise to an action, because the performance of such promise necessarily depends upon securing a divorce, and hence destroying a marriage. (Smith v. McPherson (1917) 176 Cal. 144, 146 [167 P. 875]; Jones v. Allen (1942) 14 Wn.2d 111, 119 [127 P.2d 65]; Strickland v. Anderson (1938) 186 S.C. 482, 485-486 [196 S.E. 184]; Elmore v. Haddix (1934) 254 Ky. 292, 294 [71 S.W.2d 620]; Noice v. Brown (1876) 39 N.J.Law 133; Williams v. Igel (1909) 62 Misc. 354 [116 N.Y.S. 778, 779]; Leupert v. Shields (1900) 14 Colo. App. 404, 406 [60 P. 193].)
On the other hand it has been held that where a statute fixes a period after an interlocutory decree of divorce during which the parties may not marry, a contract to marry made within such period, which is to be performed after it has expired, is not invalid either under the statute (Buelna v. Ryan (1903) 139 Cal. 630, 632 [73 P. 406]; Greenback v. Stewart (1936) 175 Okla. 500 [53 P.2d 542]), or as against the public policy of preserving marriages and encouraging reconciliation. (Fender v. St. John-Mildmay [1938] App. Cases 1, 8-26, 35-51 [Eng.].)
In Buelna v. Ryan, supra, our Supreme Court stated (p. 632): "It is claimed that the plaintiff was not capable of entering into a contract to marry in August, 1898, for the reason that she was divorced from her husband ... on June 20, 1898, and that under the provisions of section 61 of the Civil Code a subsequent marriage is illegal and void when contracted by a divorced person within one year subsequent to the date of the decree of divorce.... Under the section of the code cited, the plaintiff ... had the right to marry after the expiration of the year. If she had the right to marry at a certain time, she had the right before that time to agree to marry, provided the agreement was not to be consummated until the time. In other words, the plaintiff had the right to agree to do what the law gave her the right to do. The law gave her the right to marry after the year, and to agree to do so before the expiration thereof."[7]
*734 (15b) Here, plaintiff Santoro legally could promise to remarry defendant if the promise was made after plaintiff obtained an interlocutory divorce from his second wife, and the remarriage was to take place only after the final decree was entered. Whether plaintiff is entitled to relief in this action on the basis of defendant's failure to perform her promise depends upon whether plaintiff knew defendant was married when she made the promise, and whether the performance of the promise was contingent upon defendant's obtaining a divorce from her husband.
If plaintiff did not know defendant was married, and entered into the transaction only because of defendant's fraudulent representation that she was free to remarry him, the parties were not in pari delicto, and plaintiff may invoke the aid of equity to recover any interest in the property which defendant obtained because of such fraud.[8] (See: Tognazzi v. Wilhelm (1936) 6 Cal.2d 123, 126 [56 P.2d 1227]; Colby v. Title Ins. and Trust Co., supra, 160 Cal. at pp. 640-641; Woodham v. Allen (1900) 130 Cal. 194, 199 [62 P. 398].)
There were no findings on the following issues material to a determination of illegality: (1) whether plaintiff had obtained an interlocutory divorce from his wife when he promised to remarry defendant; (2) whether such promise was to be performed only after the final decree was entered; (3) whether plaintiff knew that defendant was married when she promised to remarry plaintiff; (4) whether defendant agreed to obtain a divorce in order to remarry plaintiff. Although we are empowered by Code of Civil Procedure section 909[9] to make findings necessary to support a *735 judgment, we may not do so here as the evidence on the material issues is conflicting. (Treu v. Kirkwood (1954) 42 Cal.2d 602, 612-613 [268 P.2d 482]; Kerr Land & Timber Co. v. Emmerson (1969) 268 Cal. App.2d 628, 636-637 [74 Cal. Rptr. 307]; Logoluso v. Logoluso (1965) 233 Cal. App.2d 523, 531 [43 Cal. Rptr. 678]; San Jose etc. Title Ins. Co. v. Elliott (1952) 108 Cal. App.2d 793, 803 [240 P.2d 41].)
The judgment is reversed with directions to the trial court to make findings on the issues necessary to enable the court to determine whether the agreement to remarry was illegal, and hence whether plaintiff is disentitled to the relief sought. Additionally, the court should correct its findings to conform to the evidence, as noted herein in footnotes 1 and 6.
Jefferson, Acting P.J., and Kingsley, J., concurred.
NOTES
[1] The trial court made a finding that, after living with plaintiff two months in the house, defendant moved out and immediately returned to her second husband (Carbone) "whom she had divorced in 1963, and whom she remarried subsequent to leaving the plaintiff in 1965." The part in quotation is totally unsupported by any evidence whatsoever, apparently is the result of inadvertence and we ignore it in this present discussion.
[2] The grant deed expressly conveyed the property to plaintiff and defendant as joint tenants. Therefore, a valid joint tenancy was created even though the parties, who were not married, were described in the deed as "husband and wife." (McWhorter v. McWhorter (1929) 99 Cal. App. 293, 295 [278 P. 454].)
[3] This conclusion renders it unnecessary to consider whether there was evidence to support the finding that plaintiff was also damaged by having used his G.I. financing rights in purchasing the property.
[4] This is not an affirmative defense at all, but merely in the nature of a demurrer.
[5] Code of Civil Procedure section 738: "An action may be brought by any person against another who claims an estate or interest in real ... property, adverse to him, for the purpose of determining such adverse claim...."
[6] Although the deed conveyed the property to plaintiff and defendant as "joint tenants" (fn. 2) there was no testimony that defendant had demanded a conveyance in that form, plaintiff merely testifying that title was to be taken in their names as husband and wife. Accordingly, on remand, the trial court's finding that defendant fraudulently induced plaintiff to have title conveyed to them as "joint tenants" should be revised, as being unsupported. However, whether title was taken as joint tenants, tenants in common or as purported husband and wife, the effect was to encumber plaintiff's title, so that he was entitled to the relief granted.
[7] Civil Code section 61 (now § 4401) read as follows at the time of the alleged promise: "A subsequent marriage contracted by any person during the life of a former husband or wife of such person, with any person other than such former husband or wife, is illegal and void from the beginning, unless: 1. The former marriage has been annulled or dissolved. In no case can a marriage of either of the parties during the life of the other, be valid in this state, if contracted within one year after the entry of an interlocutory decree in a proceeding for divorce."

Civil Code section 132 (now § 4514) read as follows: "When one year has expired after the entry of such interlocutory judgment, the court on motion of either party, or upon its own motion, may enter the final judgment granting the divorce, and such final judgment shall restore them to the status of single persons, and permit either to marry after the entry thereof...."
[8] Civil Code section 1590 provides: "Where either party to a contemplated marriage in this State makes a gift of money or property to the other on the basis or assumption that the marriage will take place, in the event that the donee refuses to enter into the marriage as contemplated or that it is given up by mutual consent, the donor may recover such gift or such part of its value as may, under all of the circumstances of the case, be found by a court or jury to be just." We have found no authority indicating this section applies only if there were valid, mutually enforceable promises by the donor and donee. Where the donor's promise was valid and the donee's was not because she was married, but did not so inform the donor, the donor should be entitled to recover gifts given in contemplation of marriage, because denial of recovery would permit the donee to profit from her fraud.
[9] Code of Civil Procedure section 909: "In all cases where trial by jury is not a matter of right or where trial by jury has been waived, the reviewing court may make findings of fact contrary to or in addition to those made by the trial court. Such findings may be based on the evidence adduced before the trial court either with or without the taking of evidence by the reviewing court. The reviewing court may for the purpose of making such findings of fact or for any other purpose in the interests of justice, take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal, and may give or direct the entry of any judgment or order and may make such further or other order as the case may require. This section shall be liberally construed to the end among others that, where feasible, causes may be finally disposed of by a single appeal and without further proceedings in the trial court except where in the interests of justice a new trial is required on some or all of the issues."