[Civ. No. 13914. Second Dist., Div. Two. Mar. 17, 1943.]

ROY H. TAYLOR, Appellant, v. OSBORNE-FITZPATRICK FINANCE COMPANY (a Corporation) et al., Defendants; VALHALLA MEMORIAL PARK (a Corporation), Respondent.

Ernest A. Clausen for Appellant.

Howard & Littlefield and George A. Judson for Respondents.

McCOMB, J.—From a judgment in favor of defendant Valhalla Memorial Park, quieting title in said defendant to 5,000 shares of the capital stock of Osborne-Fitzpatrick Finance Company, plaintiff appeals.

The case was tried as an equity suit before the court without a jury.

The evidence being viewed in the light most favorable to defendant Valhalla Memorial Park (Respondent), hereinafter referred to as defendant, the essential facts are:

September 18, 1930, Osborne-Fitzpatrick Finance Co. issued its certificate No. 6 for 5,000 shares of its capital stock to Edith May Boice, sometimes known as Edith May Osborne.

March 30, 1935, Ada H. Fitzpatrick, as a stockholder in Osborne-Fitzpatrick Finance Co., Valhalla Memorial Park, and Valhalla Mausoleum Park, filed three actions in the Superior Court of Los Angeles County against Edith May Boice and others. The actions were predicated upon fraud and conspiracy of the officers of the corporations, which were interrelated, to defraud their respective stockholders, and sought a money judgment together with injunctive relief.

April 16, 1935, the superior court issued an order pendente lite restraining and enjoining Edith May Boice and her co-defendants in the aforementioned actions, their officers, agents, servants, attorneys, and employees from transferring upon the stock transfer books of Osborne-Fitzpatrick Finance Co. certificate No. 6 representing 5,000 shares of the capital stock of said corporation, which had been issued as above mentioned to Mrs. Boice. This order remained in full force and effect throughout the pendency of the above mentioned actions, and was made permanent in a judgment of the superior court entered April 6, 1939, in favor of Ada H. Fitzpatrick. Judgments were also entered in her favor, for the benefit of the corporations in whose behalf she had sued, for large sums of money. After these judgments became final, Ada H. Fitzpatrick, for the use and benefit of Valhalla Memorial Park caused a writ of execution to be issued in one of the actions and levied upon certificate No. 6 mentioned above.

February 6, 1940, at the sheriff's sale, Ada Fitzpatrick for the benefit of the Valhalla Memorial Park purchased Mrs.

Boice's interest in the stock represented by certificate No. 6 of the Osborne-Fitzpatrick Finance Company.

Mrs. Boice testified that in April of 1935 she endorsed stock certificate No. 6 and delivered the same to Richard Kittrelle, an attorney who was representing her in the actions mentioned above. This she said was done in payment of a retainer fee for legal services theretofore rendered by him, and to be thereafter rendered in connection with the aforementioned actions.

April 16, 1941, Mr. Roy H. Taylor, having notice of the judgments in the above mentioned actions, purchased certificate No. 6 from Mr. Kittrelle for the sum of $500, whereupon Mr. Kittrelle duly assigned the certificate to him. Thereafter Mr. Taylor presented it for transfer upon the books of the Osborne-Fitzpatrick Co., which transfer was denied. He subsequently instituted the present action to have title quieted in himself to stock certificate No. 6.

Pleadings in response to his complaint were duly filed whereby defendant Valhalla Memorial Park sought to have title to the stock certificate quieted in it. At the conclusion of the trial in the instant case, the trial court made appropriate findings quieting title to the stock in said defendant.

Plaintiff urges reversal of the judgment on the ground *that there is no substantial evidence to sustain findings of the trial court which findings will be stated and considered hereunder seriatim:*

■ *First: At the time Ada H. Fitzpatrick filed the three actions described above, the records of the Osborne-Fitzpatrick Finance Co. showed that Edith M. Boice was the owner of 5,000 shares of the capital stock of said company.*

This finding is sustained by the evidence. Stock certificate No. 6 for 5,000 shares of the capital stock of the Osborne-Fitzpatrick Finance Co. was received in evidence and shows on its face that it was issued to Mrs. Boice September 18, 1930. It also shows on its face that it was never cancelled or surrendered to the corporation. In addition, plaintiff testified that he did not request the transfer of the stock on the books of the corporation until the year 1941. The three suits in question were commenced March 30, 1935. It is therefore obvious that at the time the suits in question were instituted, Mrs. Boice was the owner of 5,000 shares of the capi-

tal stock of Osborne-Fitzpatrick Finance Co. according to the records of the company.

*Second: (a) Mrs. Boice, during the entire time of the pendency and trial of the three actions mentioned above, claimed to be the owner of stock certificate No. 6 and the shares of stock represented thereby. (b) Subsequent to the 20th day of September, 1935, the exact date being unknown, Mrs. Boice for the purpose of defrauding Ada Fitzpatrick, the Osborne-Fitzpatrick Finance Co., Valhalla Memorial Park, and Valhalla Mausoleum Park, and preventing them from collecting the judgments in the actions which had been instituted against her, purported to assign and deliver certificate No. 6 to her attorney Richard Kittrelle.*

The law is established in California that, since direct proof of fraudulent intent is often an impossibility, because the real intent of the parties and the facts of a fraudulent transaction are peculiarly in the knowledge of those sought to be charged with fraud, proof indicative of fraud may come by inference from circumstances surrounding the transaction, the relationship, and interest of the parties. (*Fross* v. *Wotton*, 3 Cal.2d 384, 393 [44 P.2d 350].)

The evidence in the instant case disclosed that Mrs. Boice claimed that she transferred stock certificate No. 6 to Mr. Kittrelle about the first of April, 1935. September 26, 1935, she filed an affidavit prepared by Mr. Kittrelle in which she claimed to own 5,000 shares of the stock of the Osborne-Fitzpatrick Finance Co. September 29, 1935, Mr. Kittrelle prepared an affidavit for Mrs. Boice's then husband in which he stated that his wife, Mrs. Boice owned 5,000 shares of the stock of the Osborne-Fitzpatrick Finance Co. It is conceded that Mr. Kittrelle received the stock certificate undated and never at any time sought to have the same transferred upon the books of the corporation.

When under examination in the present suit, Mrs. Boice gave testimony which contained may contradictions, evasions, and inconsistencies.

It is clear that Mr. Kittrelle at the time he prepared the affidavits mentioned above, that is, in September of 1935, was aware of the order pendente lite restraining the transfer of certificate No. 6 issued by the superior court September 16, 1935.

The inference may be clearly drawn from the foregoing evidence that Mrs. Boice claimed to be the owner of certificate No. 6 during the pendency of the three actions described above, and attempted to assign certificate No. 6 to Mr. Kittrelle for the purpose of defrauding the corporations on whose behalf Mrs. Fitzpatrick had filed suit and also for the purpose of preventing the collection of any judgments which might be entered against her in such actions. The evidence supports the above findings.

■ *Third: The attempt to transfer certificate No. 6 of the Osborne-Fitzpatrick Finance Co. to Mr. Kittrelle was made by Mrs. Boice with full knowledge of the injunction the superior court had issued against the transfer of such stock certificate.*

Mr. Kittrelle was present at the hearing at which the injunction pendente lite was granted, and Mrs. Boice testified at the trial of the present case that she was aware of the order. Such evidence clearly sustains the above finding.

■ *Fourth: (a) Certificate No. 6 was received by Mr. Kittrelle with knowledge of the fraudulent intent of Mrs. Boice, and for the purpose of preventing the collection of any judgments which might be entered in the three suits which were then pending. (b) Richard Kittrelle acquired no right title or interest in or to certificate No. 6 or the stock it represented by reason of the purported transfer of it to him by Mrs. Boice.*

The evidence we have set forth in support of findings second and third *supra,* coupled with the fact that Mr. Kittrelle failed to have the stock certificate transferred to him upon the books of the company, and subsequently sold the stock, of a value of many thousands of dollars for $500, justifies inferences which support the findings just quoted.

■ *Fifth: Mrs. Boice was insolvent at all times subsequent to March 30, 1935, and Mr. Kittrelle knew of this fact. The assignment and delivery of certificate No. 6 by Mrs. Boice to Mr. Kittrelle was without consideration, and was made for the purpose of preventing the collection of any judgment which might be entered on the three suits which had been instituted against Mrs. Boice.*

In the present case there was received in evidence the return of the sheriff to a writ of execution which had been issued pursuant to a judgment for $35,000 against Mrs.

Boice in one of the three suits mentioned above. This return showed the judgment unsatisfied except for the sum of $5,000. Since the law is established in California that the return of an execution unsatisfied establishes a prima facie case of insolvency (see *Adams* v. *Bell,* 5 Cal.2d 697, 702 [56 P.2d 208]; *Ohio Electric Car Co.* v. *Duffet,* 48 Cal.App. 674, 675 [192 P. 298]), the sheriff's return in the present case, in the absence of any evidence to the contrary, gave rise to a substantial inference to support the above finding.

■ *Sixth: Mrs. Boice was the owner of certificate No. 6 representing 5,000 shares of the capital stock of the Osborne-Fitzpatrick Finance Co. on December 28, 1939.*

Since we are of the opinion that the evidence supports each of the findings set forth heretofore, it follows that the attempt to transfer the questioned stock certificate by Mrs. Boice to Mr. Kittrelle was void, and therefore the title to certificate No. 6 and the stock represented thereby remained in Mrs. Boice.

■ *Seventh: Valhalla Memorial Park has been the owner of certificate No. 6 and the stock represented thereby ever since it was purchased on behalf of said defendant at the sheriff's sale on February 6, 1940.*

Since we have found that finding number sixth *supra,* was amply supported by the evidence, it follows that the present finding is likewise supported by the evidence, as it is clear that when Ada H. Fitzpatrick purchased certificate No. 6 at the sheriff's sale February 6, 1940, for Valhalla Memorial Park, said corporation acquired Mrs. Boice's interest in the stock certificate.

■ *Eighth: The 5,000 shares of stock of the Osborne-Fitzpatrick Finance Co. represented by certificate No. 6 was on February 6, 1940, reasonably worth a sum greatly in excess of $500.*

This finding finds substantial support in the evidence. Certificate No. 6 represented fifty percent of the outstanding capital stock of the Osborne-Fitzpatrick Finance Co., and according to the financial statement of the receivers of the corporation received in evidence, the corporation averaged a profit of $17,346 per year.

■ *Ninth: Plaintiff had actual knowledge February 6, 1940, that stock certificate No. 6 had been purchased by Ada*

*H. Fitzpatrick at a sheriff's sale on behalf of Valhalla Memorial Park.*

Plaintiff testified during the instant trial that prior to the time he purchased stock certificate No. 6 from Mr. Kittrelle he examined the sheriff's return to the writ of execution which had been issued upon one of the judgments obtained in the actions instituted by Ada H. Fitzpatrick, and he also testified that he was aware of the fact that stock certificate No. 6 had been sold at the sheriff's sale.

█ *Tenth: That certificate No. 6, if left outstanding, might cause serious injury to defendant Valhalla Memorial Park.*

It needs no argument to support the foregoing finding. It is clear that if the certificate were left outstanding it might come into the hands of a bona fide purchaser for value without notice, and much litigation might ensue, all to the detriment of defendant Valhalla Memorial Park.

There are three questions as to the admissibility of evidence which will be stated and considered hereunder:

█ *First: Was the affidavit of Mrs. Boice dated September 27, 1935, properly received in evidence?*

This question must be answered in the affirmative. The law is established in California that where there is an issue as to whether a transfer is in fraud of creditors, and where there is independent evidence of a common design between the grantor and grantee that they intended to defraud creditors, declarations of the grantor subsequent to the date of the transfer are admissible. (*McGee v. Allen,* 7 Cal.2d 468, 476 [60 P.2d 1026].)

The foregoing rule is an exception to the general rule that actions and declarations of a grantor after he has parted with title to property do not constitute competent evidence. (*Manhattan Beach v. Cortelyou,* 10 Cal.2d 653, 670 [76 P. 2d 483]; see, also, *Byerley v. Conlin,* 174 Cal. 40, 42 [161 P. 1150].) In this case at the time the affidavit was received in evidence, there was other evidence that Mrs. Boice and her attorney, Mr. Kittrelle, had entered into a scheme to defraud her creditors. Therefore the affidavit in which Mrs. Boice claimed to be the owner of stock certificate No. 6 was competent and material evidence.

█ *Second: Was the affidavit of Mr. Boice dated October 29, 1935, admissible in evidence?*

This question must likewise be answered in the affirmative. Over objection, the affidavit was received for the sole purpose of showing that Mr. Kittrelle had notice that Mrs. Boice claimed to be the owner of stock certificate No. 6 subsequent to the date it was alleged to have been transferred by her to him.

Mr. Kittrelle prepared the affidavit in which Mr. Boice stated that his wife, Mrs. Boice, owned fifty percent of the stock of the Osborne-Fitzpatrick Finance Co. It is clear that the affidavit was competent and material evidence as to Mr. Kitrelle's knowledge that Mrs. Boice claimed to be the owner of stock certificate No. 6 at a period many months after she had purportedly transferred it to him.

*Third: Were the judgments in the three actions referred to above, which had been instituted by Ada H. Fitzpatrick, properly received in evidence?*

This question must also be answered in the affirmative. These judgments were clearly admissible for the purpose of establishing the fact that the parties, in whose favor the judgments had been rendered, were creditors of Mrs. Boice at the time she claimed to have transferred stock certificate No. 6 to Mr. Kittrelle.

For the foregoing reasons the judgment is affirmed.

Moore, P. J., and Wood (W. J.), J., concurred.