[Civ. No. 18554.   First Dist., Div. Two.   Feb. 23, 1960.]

HENRY WOOD, Respondent, v. MAX KAPLAN et al., Defendants; SIDNEY KAPLAN et al., Appellants.

Twohig, Weingarten & Haas for Appellants.

George D. Pollock for Respondent.

KAUFMAN, P. J.—This is an action by a judgment creditor of defendant, Max Kaplan, to set aside an alleged fraudulent transfer made by him to his son and daughter-in-law, Sidney and Rose Kaplan, the appellants. The trial court found that the property had been fraudulently transferred and decreed that the appellants held in trust for the respondent $4,992.02 of the proceeds of the subsequent sale of the property. The only argument on appeal is that the evidence is insufficient to support the judgment as there was evidence that the appellants had given fair consideration for the property and in the alternative, that there was ample evidence of a completed parol gift by appellants' transferors.

The respondent, Henry Wood, was an employee of Max and Beckie Kaplan, the parents of Sidney Kaplan. Sidney and his wife, Rose, lived with his parents for many years on the property in Salinas which is the subject of this dispute. There was a close and confidential relationship between all the members of the Kaplan family throughout the period of time which is relevant here.

On August 24, 1954, the plaintiff, Henry Wood, suffered major burns in the course and scope of his work as an em-

ployee of Max and Beckie Kaplan. His employers carried no workmen's compensation insurance. Max testified that he knew his insurance had expired before the accident. There was also evidence that because of this fact, on the day after the accident, Max tried to influence the respondent's attorney to drop the suit by offering to pay his fee. On the date of the accident, Max Kaplan was worth about $100,000 in property, his chief asset being the Salinas property. On August 25, 1954, Max and Beckie Kaplan quitclaimed all of their property to their son and daughter-in-law. The deed was prepared, executed and recorded on August 25, 1954. As a result of this transaction, Max and Beckie became insolvent.

On November 3, 1954, Beckie Kaplan died. On June 1, 1955, the Industrial Accident Commission rendered an award to the respondent Wood against Max Kaplan. On June 27, 1955, Sidney and Rose Kaplan sold the unimproved portion of the Salinas property and applied the proceeds of the sale to reduce the mortgage. On August 25, 1955, the plaintiff converted his award into a superior court judgment. Execution was issued on September 13, 1955, and returned unsatisfied because on September 9, 1955, Sidney and Rose deeded the balance of the property to the Bertlesmans. The proceeds of this transaction were used to pay the balance of the mortgage, and the remainder was applied by Sidney Kaplan for his own benefit.

This action was filed on October 5, 1955. The court in its findings of fact found that the conveyance of August 25, 1954, was made without consideration; and that Sidney and Rose did not accept the conveyance with knowledge of the fraudulent intent of Max Kaplan and with intent to assist him in his fraudulent purpose. The court then drew the following conclusions of law:

"That the transfer of said real property from Max Kaplan and Beckie Kaplan to Sidney Kaplan and Rose Kaplan above described was fraudulent as to the plaintiff, being a violation of Section 3439.04 of the California Civil Code;

"That plaintiff is entitled to have Sidney Kaplan and Rose Kaplan hold said sum of $4,992.02 as a trust fund to satisfy that certain judgment dated August 25, 1955, entered in this court in favor of plaintiff Henry T. Wood and against Max Kaplan, action number 40784, and for his costs; and plaintiff is entitled to have execution issue for the amounts that shall from time to time fall due thereunder."

Section 3439.04 of the Civil Code provides: ''Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration. (Added Stats. 1939, ch. 329, p. 1668, § 6.)''

Appellants' first argument is that they gave fair consideration for the property because they managed the Salinas property, collected the rents and paid the debts against it. Sidney Kaplan testified that his wife kept all of the books relating to these transactions. Rose Kaplan, however, at the trial could not remember anything about the property. There was, however, also evidence that Beckie Kaplan managed the property until her death and that Sidney and Rose did not pay any debts until after her death and that Sidney and Rose did not pay any debts until after the transfer of August 25, 1954. For example, on December 12, 1954, they borrowed $30,000 on the transferred Salinas property and paid off the balance of the old mortgage. Appellants rely on *Mix* v. *Yoakum*, 138 Cal.App. 290 [31 P.2d 1071]. In that case (decided before section 3439.04 of the Civil Code was enacted), no one became unjustly enriched at the expense of a creditor and the sons assumed and paid off a $30,000 mortgage on the property on the day they received the deed to it from their father. In the instant case, there is no evidence of any consideration flowing from Sidney and Rose to Beckie and Max and the court found that the transfer was made without consideration.

Appellants' second argument is that there was a completed parol gift of the property to them before August 25, 1954, as the property was to be transferred to them so they could secure a construction loan for their new home in Seaside. There was, however, also evidence that the trust deed to secure this loan was not made until January, 1955. Furthermore, it is uncontroverted that the gift rendered Max insolvent. The transfer was, therefore, presumptively fraudulent (Civ. Code, § 3439.01 et seq.), and the presumption itself is evidence of fraud. Moreover, the court found that Max had an actual intent to defraud the respondent. (*Hickson* v. *Thielman*, 147 Cal.App.2d 11 [304 P.2d 122]; *Menick* v. *Goldy*, 131 Cal.App.2d 542 [280 P.2d 844].)

Furthermore, the relationship of parent and child when coupled with other suspicious circumstances, may be sufficient to raise an inference of fraud in the conveyance.

(12 Cal.Jur. 974, § 15.) ■ ". . . Any relation which gives rise to confidence, . . . strengthens the presumption that may arise from other circumstances, and serves to elucidate, explain or give color to the transaction . . . 'wherever this confidential relation is shown to exist, the parties are held to a fuller and stricter proof of the consideration, and of the fairness of the transaction.' " (*Cioli* v. *Kenourgios*, 59 Cal.App. 690, 696-697 [211 P. 838]; *Walker* v. *Laugharn*, 44 Cal.App.2d 469 [112 P.2d 695].)

■ As stated in *Menick* v. *Goldy*, 131 Cal.App.2d 542, 547-548 [280 P.2d 844]: "To make out the case alleged it was necessary that plaintiff establish that there had been a transfer of the property. (*Scholle* v. *Finnell*, 173 Cal. 372, 376-377 [159 P. 1179].) The real intent of the parties and the facts of a fraudulent transaction are peculiarly within the knowledge of those sought to be charged with fraud. Direct proof of a transfer and of a fraudulent intent is often an impossibility. ■ Hence proof indicative of a transfer and of fraud may come by inference from circumstances surrounding the transaction, the relationship and interest of the parties. (*Taylor* v. *Osborne-Fitzpatrick Fin. Co.*, 57 Cal. App.2d 656, 661 [135 P.2d 598]; *Burns* v. *Radoicich*, 77 Cal.App.2d 697, 702 [176 P.2d 77].)"

In view of the foregoing, the judgment must be and is hereby affirmed.

Dooling, J., and Draper, J., concurred.