Filed 7/21/20 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| UNIVERSAL HOME IMPROVEMENT, INC., et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>KATHERINE ROBERTSON et al.,<br><br>    Defendants and Respondents. | A157067, A157562<br>(San Mateo County<br>Super. Ct. No. CIV532372)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING |

BY THE COURT:

The opinion filed herein on June 24, 2020, is modified as follows:

On page 14, the first full paragraph is deleted.

This modification does not effect a change in the judgment. The petition for rehearing is denied.

Dated: _____                _____ Acting P.J.

1

| | |
|---|---|
| Trial Court: | San Mateo County Superior Court |
| Trial Judge: | Honorable V. Raymond Swope<br>Honorable Nancy L. Fineman |
| Attorney for Plaintiffs and<br>Appellants Universal Home<br>Improvement, Inc., et al.: | Kastner Kim, LLP, Eric C. Kastner;<br>J. Philip Martin |
| Attorney for Defendants and<br>Respondents Carol Bennett, et al.: | Serlin & Whiteford, LLP, Mark A.<br>Serlin. |

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| UNIVERSAL HOME IMPROVEMENT, INC., et al.,<br><br>       Plaintiffs and Appellants,<br><br>v.<br><br>KATHERINE ROBERTSON et al.,<br><br>       Defendants and Respondents. | A157067, A157562<br><br>(San Mateo County<br>Super. Ct. No. CIV532372) |

Plaintiffs Universal Home Improvement, Inc. (UHI) and Mark Lavine, its president, sued five defendants for fraudulent transfer. Following a two-day bench trial, the court held that the transfer was made in satisfaction of an antecedent debt, and entered judgment for defendants. Following their success, defendants moved for costs of proof attorney fees under Code of Civil Procedure section 2033.420, subdivision (a), and a different judge awarded one defendant $35,595 in fees.

Plaintiffs appeal both the judgment for defendants and the order awarding costs of proof fees. We conclude the appeal from the judgment is not well taken, and thus affirm it. We conclude, however, that the costs of proof award was improper, and thus order it stricken.

## BACKGROUND

**The General Setting**

Katherine Robertson and Carole Bennett were sisters. In 1994, Robertson, Bennett, and four other siblings formed a partnership known as

1460 O'Brien Street Associates (1460 O'Brien), which owned an office building at 1460 O'Brien Street in Menlo Park. Each partner owned one-sixth of the partnership.

Thereafter, the siblings purchased an office building in Austin, Texas, which they managed through a limited partnership, AIS Partner-Austin L.P. (AIS). As with 1460 O'Brien, the siblings each owned one-sixth of the partnership assets.

In November 2011, the O'Brien Street property was exchanged for two separate properties in Colorado: an office building in Broomfield and a shopping center in Aurora.

In August 2007, the first of seven loans totaling $650,000 was made to Robertson. Five of the loans were from Bennett and two from 1460 O'Brien, $525,000 coming from accounts in the name of Bennett, $125,000 from 1460 O'Brien accounts. Each loan was subject to a formal, written promissory note; each loan had attached a payment schedule; and each loan provided that Robertson would be in default on any failure to make the monthly payments.

Robertson made only one payment on the loans, in April 2008, a payment of $30,000.

**The Lawsuit Against Robertson**

In 2010, plaintiffs sued Robertson in connection with a claimed misappropriation of assets, which lawsuit apparently involved claims of fraud. (San Mateo County Case No. CIV495673.) That lawsuit came on for court trial before the Honorable Gerald Buchwald, a trial attended by Bennett. As plaintiffs describe it, all indications were that Judge Buchwald was going to rule for plaintiffs and against Robertson. And on March 19, 2012, Judge Buchwald announced his statement of decision in favor of

plaintiffs and against Robertson in the amount of $3,500,000, exclusive of interest and costs.

On April 6, 2012, Robertson transferred her one-sixth fractional interests in the two family partnerships to Bennett.

**The Proceedings Below**

On February 3, 2015, plaintiffs filed a complaint, followed shortly by an amended complaint, for fraudulent transfer, seeking to set aside the transfers of the partnership interests. The complaint named five defendants: Robertson, Bennett, 1460 O'Brien, AIS, and Bay AT-Austin, Inc. (when referred to collectively, defendants).

The case generated a 38-page register of actions, review of which shows that defendants, apparently led by Bennett, were responsible for much of the activity. For example, defendants resisted producing documents, forcing plaintiffs to file a motion to compel. Defendants also filed a motion to keep documents under seal, which was denied. And in August 2015, defendants filed a motion for summary judgment, which was also denied.

The case was originally set for trial in February 2016, but apparently because of discovery-related issues, plaintiffs moved to continue the trial and extend discovery. The motion was granted, and trial was continued to June 20. Then, on that date the case was "stayed" because Robertson declared bankruptcy, as a result of which the case did not come on for trial until August 2018.[1]

We digress momentarily from the chronology of the proceedings below to set forth the law that would be involved in that trial. The law begins with the enactment of Civil Code section 3439 et seq., originally called the

---

[1] In January 2017, Bennett filed a motion to dismiss for failure to prosecute, which was denied.

3

Uniform Fraudulent Transfer Act, which in 2015 was renamed the Uniform Voidable Transactions Act (for consistency with the briefing, UFTA).  Section 3439.04 of the UFTA provides as follows:

"(a)  A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:

"(1)  With actual intent to hinder, delay, or defraud any creditor of the debtor.

"(2)  Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:

"(A)  Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

"(B)  Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

"(b)  In determining actual intent under paragraph (1) of subdivision (a), consideration may be given, among other factors, to any or all of the following:

"(1)  Whether the transfer or obligation was to an insider.

"(2)  Whether the debtor retained possession or control of the property transferred after the transfer.

"(3)  Whether the transfer or obligation was disclosed or concealed.

"(4)  Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

"(5)  Whether the transfer was of substantially all the debtor's assets.

4

"(6) Whether the debtor absconded.

"(7) Whether the debtor removed or concealed assets.

"(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

"(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

"(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

"(11) Whether the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.

"(c) A creditor making a claim for relief under subdivision (a) has the burden of proving the elements of the claim for relief by a preponderance of the evidence."

Subsection (b) with its 11 factors was added in 2004, and a 2005 opinion described the new subsection this way: "Over the years, courts have considered a number of factors, the 'badges of fraud' described in a Legislative Committee comment to section 3439.04, in determining actual intent. [Citation.] Effective January 1, 2005, those factors are now codified at section 3439.04, subdivision (b) and include considerations such as whether the transfer was made to an insider [citation], whether the transferee retained possession or control after the property was transferred [citation], whether the transfer was disclosed [citation], whether the debtor had been sued or threatened with suit before the transfer was made [citation], whether the value received by the debtor was reasonably equivalent to the value of the transferred asset [citation], and similar concerns. According to section 3439.04, subdivision (c), this amendment 'does

5

not constitute a change in, but is declaratory of, existing law.' " (*Filip v. Bucurenciu* (2005) 129 Cal.App.4th 825, 834 (*Filip*).) And *Filip* went on: The factors in Civil Code section 3439.04, subdivision (b) "do not create a mathematical formula to establish actual intent. There is no minimum number of factors that must be present before the scales tip in favor of finding of actual intent to defraud. This list of factors is meant to provide guidance to the trial court, not compel a finding one way or the other. [Citation.]" (*Filip*, *supra*, 129 Cal.App.4th at p. 834.)

One other section of the UFTA particularly apt here is Civil Code section 3432, which provides as follows: "A debtor may pay one creditor in preference to another, or may give to one creditor security for the payment of his demand in preference to another."

And finally pertinent here—with the transfers from Robertson to her sister Bennett—are the cases that recognize that such transfers be given "strict scrutiny." (See *Wood v. Kaplan* (1960) 178 Cal.App.2d 227, 230–231 [transfer from father to son and daughter]; *Decker v. Voisenat* (*In re Serrato*) (Bankr. N.D. Cal. 1997) 214 B.R. 219 [transfer from mother to son].)

Returning to the chronology, the case came on for non jury trial before the Honorable V. Raymond Swope, who heard two days of testimony, on August 6 and 7, 2018. Plaintiffs' case-in-chief was brief, only three witnesses testifying: Lavine; Bennett, called under Evidence Code section 776; and Robertson, whose testimony came via deposition transcripts. Plaintiffs then rested, except for issues of the valuation of the partnership interests.

At the conclusion of plaintiffs' evidence, all defendants other than Bennett moved for judgment pursuant to Code of Civil Procedure section 631.8 (section 631.8 motion). Plaintiffs did not offer any rebuttal or additional evidence, and the motion was taken under submission.

6

Judge Swope then heard from expert witnesses from both sides, who testified as to the valuation of the two transferred partnership interests. Following the conclusion of evidence and the admission of the numerous exhibits, Judge Swope directed the parties to submit written briefing on the issues at trial and also on the section 631.8 motion.

The briefing was received, six briefs in all:  plaintiffs' closing brief; defendants' post trial brief; responses to the post trial briefs by both sides; and two briefs on the section 631.8 motion.

Following receipt of the briefs, on October 15, Judge Swope heard oral closing arguments.  Plaintiffs argued that Robertson's debts were time barred and thus could not constitute reasonably equivalent value.  They also argued that the $30,000 payment in April of 2008 would not toll the statute of limitations because such payment was applied only to the advances initially made from 1460 O'Brien accounts.  There was also discussion as to whether the cases relied upon by defendants—holding that a debtor has the right to prefer one creditor over another pursuant to Civil Code section 3432—were still applicable in light of the 2004 changes to the UFTA.  Finally, there was extensive discussion as to the significance of the existence of the "badges of fraud."

Following the arguments, the parties submitted proposed statements of decision.  And on December 18, Judge Swope held yet another hearing.

On January 28, 2019, Judge Swope issued his statement of decision.  It was a comprehensive, thoughtful 11 pages that, following six pages of "Introduction" and "Synopsis of Trial Evidence," made these extensive "Findings of Fact":

"This Court makes the following findings by a preponderance of the evidence.  The Court finds that during the Fall of 2007 and the early part of

7

2008, advances to Robertson totaling $650,000.00 were made. Of these, $525,000.00 came from accounts in the name of Bennett and $125,000.00 originally came from accounts in the name of 1460 O'Brien. The undisputed evidence showed that Bennett considered the latter advances to have been made by her rather than 1460 O'Brien and she made arrangements to compensate the remaining partners of 1460 O'Brien for such loan and that the right to receive payment on the loan was transferred to her. The Court further finds that a $30,000.00 payment was made [by] Robertson to Bennett in respect of these loan advances on April 12, 2008, less than 4 years prior to the transfers in issue in this case.

"On April 6, 2012, Robertson transferred her one-sixth interests in 1460 O'Brien and AIS to Bennett in respect of the loan advances described above. Although there was also a transfer of a one-half interest in certain real property located in Mariposa County, California, there was undisputed evidence that at the time of such transfer, that property was over encumbered and thus had no value. As such, for purposes of this action, only the transfers of the one-sixth interests in 1460 O'Brien and AIS remain at issue.

"The Court finds that in early April 2012 when the one-sixth interests in 1460 O'Brien and AIS were transferred by Robertson to Bennett, Robertson owed Bennett about $800,000.00 when accrued unpaid interest is added to principal. The Court further finds that at that time, Robertson's one-sixth interests in 1460 O'Brien and AIS had a combined value of slightly under $500,000.00. The Court finds persuasive the testimony and report of Defendants' expert and specifically finds that the lack of control and lack of marketability discounts applied by Defendants' expert were appropriate and reasonable under the circumstances. Further, the Court finds that the

8

mortgage debt against the AIS partnership property as reflected in Defendants' expert's report (which was admitted into evidence without objection) as well as Bennett's testimony as to its existence is credible. The [C]ourt further finds that this mortgage debt was appropriately considered when arriving at the value of Robertson's one-sixth partnership in AIS.

"The Court also finds that the Agnes Bennett loan was properly taken into consideration by Defendants' expert in arriving at his valuation of Robertson's one-sixth interest in 1460 O'Brien at the time of the transfer in April of 2012. This finding is based upon the testimony of both Defendants' expert as to 1460 O'Brien's books and records, as well as Bennett's uncontested testimony, that the Agnes Bennett loan was reflected on 1460 O'Brien's books and records, and that interest payments were being made thereon.

"Additionally, the Court finds that the $30,000.00 payment made by Robertson in mid-April of 2008 is properly treated as a payment on the aggregate debt owed by Robertson to Bennett and not merely on one portion of the advances of such loans. As discussed at the final closing argument herein, the Court considers such $30,000.00 payment equivalent to a payment of a credit card bill where there may be multiple advances over time, but the payment is made with regard to the aggregate debt and not merely one piece of it.

"In light of the foregoing, the Court further finds that Robertson's transfer to Bennett of her one-sixth partnership interests in 1460 O'Brien and AIS [ ] was made in satisfaction of an antecedent debt in an amount greater than the value of the transferred partnership interests, and that reasonably equivalent value was given by Bennett in exchange for the transfers."

9

The statement of decision ended with Judge Swope's "Conclusions of Law" holding for defendants, as discussed below.

Judgment for Bennett was thereafter entered, from which plaintiffs filed an appeal.[2]

Thereafter, defendants filed two motions, one for expert costs pursuant to Code of Civil Procedure section 998, and one for costs of proof fees pursuant to Code of Civil Procedure section 2033.420. The claim for expert costs was not opposed, but the claim for costs of proof fees was. The law and motion judge, not Judge Swope, awarded fees to Bennett in the amount of $35,595, plus costs of $1,930.04, for a total of $37,525.04. Plaintiffs filed a separate notice of appeal from the fee award, and we ordered the appeals consolidated.

## DISCUSSION

### The Standard of Review

Plaintiffs assert that the standard of review is de novo, apparently on two bases: the case involves "questions of law, including the meaning and interpretation of governing statutory provisions" and "where the underlying material facts are undisputed, as they are here." As to the latter point, plaintiffs go on, "It is clear that there were few disputed facts after trial. The amount and date of the loans, Bennett's decision not to pursue repayment of the 'loans' until [plaintiffs] were about to be awarded their judgment and the presence of many of the statutory 'badges of fraud' were uncontested. All that the trial court was then left to do was apply clear statutory authority

---

[2] Judge Swope also entered judgment in favor of the partnerships pursuant to Code of Civil Procedure section 631.8, which judgment is not contested on appeal.

10

contained in the [UFTA] which should have resulted in a judgment for [plaintiffs]."

We disagree.

The most fundamental principle of appellate review is that "A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it . . . and error must be affirmatively shown." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) One of those presumptions is that the record has sufficient evidence to sustain the trial court's findings of fact. (E.g., *In re Marriage of Fink* (1979) 25 Cal.3d 877, 887.) And we have put it, " 'Where statement of decision sets forth the factual and legal basis for the decision, any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision.' [Citation.]" (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1531.)

Put otherwise, under the rule of conflicting inferences, we must indulge all reasonable inferences in favor of Bennett, the prevailing party below. (*County of Kern v. Jadwin* (2011) 197 Cal.App.4th 65, 72–73.) Indeed, the rule of conflicting inferences defeats plaintiffs even if the evidence was, as plaintiffs contend, undisputed. As the Supreme Court has recently confirmed, citing a variety of authorities: "[I]t is settled that when conflicting inferences may be drawn from undisputed facts, the reviewing court must accept the inference drawn by the trier of fact so long as it is reasonable. (*Hamilton v. Pacific Elec. Ry. Co.* (1939) 12 Cal.2d 598, 602–603; *Mah See v. North American Acc. Ins. Co.* (1923) 190 Cal. 421, 426; see 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 376, pp. 434–435; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2010) ¶ 8:60,

11

p. 8-29.)" (*Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 913.)

The issue of whether a transfer was made with fraudulent intent is a question of fact. (*Filip*, *supra*, 129 Cal.App.4th at p. 834.) And from his findings of fact, Judge Swope reached his conclusions of law in favor of defendants, conclusions we review de novo. (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.)

Judge Swope's "Conclusions of Law" began with this paragraph:

"The Court concludes that although Robertson was substantially indebted to plaintiffs in April of 2012, Robertson was indebted to Bennett in the amount of $800,000.00 at that time, and that Robertson had a right under Civil Code [section] 3432 to prefer Bennett over other creditors. *Wyzard* [*v. Goller* (1994) 23 Cal.App.4th 1183] and *Annod* [*Corp. v. Hamilton & Samuels* (2002) 100 Cal.App.4th 1286.] As set forth in *Wyzard*, *supra*, and *Annod*, *supra,* a transfer on account of a pre-existing debt is not fraudulent as to creditors even if (a) the transfer was made to an insider, (b) effectively prevents another creditor from collecting on his debt, and (c) the preferred creditor has knowledge of that reality. See also *Bumb v. Bennett* (1958) 51 Cal.2d 294, 300. Further, because the value of the assets transferred to Bennett was less than the amount of debt then owed to Bennett by Robertson, reasonably equivalent value was given as per Civil Code §§ 3439.03 and 3439.08 and thus there was no voidable transfer."

Judge Swope then turned to plaintiffs' reliance on the "badges of fraud." Expressly noting that the "proof established seven of the 11 badges of fraud," Judge Swope said he gave them "strict scrutiny," concluding as follows: "[T]he existence of one or more badges of fraud is not a mathematical formula and does not compel a finding one way or another. *Filip*, [*supra*,] 129

12

Cal.App.4th [at p.] 835. The Court rejects Plaintiff's contention that *Wyzard*, *supra*, and *Annod*, *supra,* were effectively overruled by the 2004 amendments to the then Fraudulent Transfer Act; numerous published decisions citing [the cases] with approval have been issued after the passage of those amendments (e.g. [*In re*] *Beverly* [(Bankr. 9th Cir. 2007) 374 B.R. 221] a case cited by Plaintiffs in their post-trial brief). Moreover, Civil Code § 3432 remains good law and there is nothing in the 2004 amendments to the Fraudulent Transfer Act which states otherwise. The 'badges of fraud' do not matter when value is given, such as satisfaction of antecedent debt. *Wyzard*, *supra*, and *Annod*, *supra*. Put simply, this court believes and therefore finds that the transfer that is the subject of this litigation was a good faith satisfaction of a legitimate debt.

"The Court concludes that the $30,000.00 payment in April of 2008 tolled the statute of limitations on Robertson's debts to Bennett pursuant to [Code of Civil Procedure section] 360. Even then, such is not strictly necessary to the Court's decision. *In re Prejean* (9th Cir. 1993) 994 F.2d 706 and *United States Fidelity & Guaranty Co. v. Postel* (1944) 64 Cal.App.2d 567 specifically held that satisfaction of antecedent debt does indeed constitute fair value for purposes of fraudulent transfer law, regardless of whether there was a possible time bar to the antecedent debt. *In re Prejean, supra*, has never been questioned by any subsequent California authority. Federal appellate decisions concerning California law must be accorded great weight by California Courts. *Etcheverry v. Tri-Ag* (2000) 22 Cal.4th 316, 320–321; *Adams v. Pacific Bell Directory* (2003) 111 Cal.App.4th 93, 97. See also *Travelers Cas. & Sur. Co. v. Sup. Ct.* (1998) 63 Cal.App4th 1440, 1454 to the same effect. Because *In re Prejean, supra*, is directly on all fours with the instant case both legally and factually, Plaintiffs' assertion (with no citation

13

to authority) to the contrary is rejected.  Further *Mejia v. Reed* (2003) 31 Cal.4th 657, 662 expressly states that the Fraudulent Transfer Act 'shall be applied and construed to effectuate its general purpose to make uniform the law,' *citing* Civil Code § 3439.11.  This Court finds *In re Prejean*, *supra*, to be persuasive authority to the extent necessary in determining that the transfers on account of antecedent debt in issue in this case constitute reasonably equivalent value pursuant to Civil Code § 3439.08.  Moreover, the California authority relied upon by *In re Prejean*, *supra* (namely, *United States Fidelity*, *supra*) remains good law."

Judge Swope's conclusions are spot on.  And plaintiffs' arguments to the contrary are easily rejected.

Plaintiffs contend that a creditor whose debt is time barred by the governing limitations period no longer has a "right to payment."  But the statute of limitations is an affirmative defense that can be waived.  (*Save Agora Cornell Knoll v. City of Agoura Hills* (2020) 46 Cal.App.5th 665, 681; *PGA West Residential Assn., Inc. v. Hulven Internat., Inc.* (2017) 14 Cal.App.5th 156, 176; *California Concrete Co. v. Beverly Hills Savings & Loan Assn.* (1989) 215 Cal.App.3d 260, 272–274.)

Plaintiffs attempt to distinguish *In re Prejean*, *supra*, 994 F.2d 706  and *United States Fidelity & Guaranty Co. v. Postel*, *supra*, 64 Cal.App.2d 567, the cases relied on by Judge Swope for the proposition that a transfer on account of antecedent debt, even if such debt might have been subject to a statute of limitations defense, constitutes a transfer for value within the meaning of the voidable transfer statute.  Such attempt is unavailing. Neither *In re Curry & Sorenson, Inc.* (Bankr. 9th Cir. 1990) 112 B.R. 324 nor *Laidley v. Heigho* (9th Cir. 1963) 326 F.2d 592, the two cases plaintiffs cite in support of a contrary proposition, contains any discussion of the issue.

14

Plaintiffs' last argument is that Civil Code section 3432 does not pertain, apparently because of the seven "badges of fraud" plaintiffs claim are present here. Not so.

It is perhaps enough to note, as did one court in the summary judgment context, that "Even the existence of several 'badges of fraud' may be insufficient to raise a triable issue of material fact." (*Annod Corp. v. Hamilton & Samuels, supra*, 100 Cal.App.4th at p. 1299.) Beyond that, "[t]his list of factors is meant to provide guidance to the trial court, not compel a finding one way or the other." (*Filip, supra*, 129 Cal.App.4th at p. 834.)

**The Costs of Proof Award Was Error**

As noted, plaintiffs' complaint and amended complaint were filed in February 2015. Defendants' answer was filed on April 1. On May 11, barely a month later, defendants jointly propounded requests for admissions (RFAs). Several of the requests—numbers two through six, nine and ten—essentially asked plaintiffs to admit that they had no claim against Bennett as she had not received any fraudulent transfer, as the value of the interests were less than the loans made by Bennett to her sister. Plaintiffs' response denied all six requests.

Following their success at trial, defendants moved for attorney fees as costs of proof at trial pursuant to Code of Civil Procedure section 2033.420, subdivision (a). The motion was originally scheduled before Judge Swope, but according to the amended notice, was rescheduled "at the request of the court" for hearing in the law and motion department.

Plaintiffs filed opposition, included within which was their objection to the matter being heard by the law and motion judge, as the motion necessarily required an analysis of the proof offered at trial, which the law

15

and motion judge did not preside over. And as to the substance of the issue, plaintiffs' opposition discussed at length their "proof at trial." The opposition also referred to the unsuccessful summary judgment motion. Finally, plaintiffs noted that "no . . . authority supports defendants' position."

Defendants filed a reply, and the matter came on for hearing before the law and motion judge who had issued a tentative ruling apparently awarding some fees, but concluding that defendants' showing was inadequate. A minute order describes the unusual developments that ensued: following a brief hearing, "on April 23, 2019, after argument, the Court confirmed the tentative ruling that defendant Bennett was entitled to fees and costs for Request for Admissions No. 2-10, inclusive, but failed to establish the amount directly attributable to proving the Requests for Admissions. The Court continued the motion to May 24, 2019 at 9:30 a.m. in Department 4 of this Court to allow Defendant Bennett to file and serve a supplemental brief and supporting declaration demonstrating with specificity and clarity which billing entries relate to which Requests for Admissions and allowing Plaintiffs to file and serve a responsive Supplemental Brief that addressed only Defendant Bennett's Supplemental Brief/Declaration. [¶] After reviewing the supplemental briefs and declaration filed by the parties and good cause appearing, the Court GRANTS the motion as to Defendant Bennett only and awards attorneys' fees and costs of proof sanctions pursuant to Code of Civil Procedure section 2033.420(b) related to the denial of Request for Admission No. 2-10, inclusive, in the amount of $35,595.00 in attorneys' fees and $1,930.04 in costs for a total of $37,525.04."

Following an order that included the award of fees to Bennett, plaintiffs filed their second appeal, which contends the costs of proof award was error. We agree.

16

The relevant statute, Code of Civil Procedure section 2033.420 (formerly Code Civ. Proc., § 2033, subd. (o)), provides as follows:

"(a)  If a party fails to admit the genuineness of any document or the truth of any matter when requested to do so under this chapter, and if the party requesting that admission thereafter proves the genuineness of that document or the truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees.

"(b)  The court shall make this order unless it finds any of the following:  . . . (3) The party failing to make the admission had reasonable ground to believe that that party would prevail on the matter.  [¶]  (4) There was other good reason for the failure to admit."

Our standard of review of an order granting cost of proof attorney fees is abuse of discretion.  (*Grace v. Mansourian* (2015) 240 Cal.App.4th 523, 529; *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1275–1276 (*Laabs*).)

We elaborated on the concept of abuse of discretion in *People v. Jacobs* (2007) 156 Cal.App.4th 728.  Holding that there was an abuse of discretion in denying a short continuance, we ended our discussion with this observation: "In *Concord Communities v. City of Concord* (2001) 91 Cal.App.4th 1407, 1417 our colleagues in Division Four of this court observed that 'Abuse of discretion has at least two components:  a factual component . . . and a legal component.  [Citation.]  This legal component of discretion was best explained long ago in *Bailey v. Taaffe* (1866) 29 Cal. 422, 424: "The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles.  It is not a mental discretion, to be exercised *ex gratia*, but a legal discretion, to be

17

exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." '

"All this is well described in Witkin where, likewise citing the still vital *Bailey v. Taaffe*, *supra*, 29 Cal. 422, 424, the author distills the principle as follows: 'Limits of Legal Discretion. [¶] The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown. (See 5 Am.Jur.2d, Appellate Review § 695.) . . .' (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 358, pp. 406–407.)" (*People v. Jacobs*, *supra*, 156 Cal.App.4th at pp. 737–738.)

We conclude that the costs of proof award here is not "in conformity with the spirit of the law"—it does not "subserve . . . substantial justice."

Frankly, we are troubled that a defendant can at the very inception of litigation, at a time when, as best we can tell, no discovery had taken place, and certainly no deposition, serve RFAs essentially seeking responses admitting that plaintiff had no case, and then, if plaintiff ultimately proves unsuccessful, recover costs of proof attorney fees, as here. This, it could be said, is tantamount to a form of strict liability: make a claim; deny an early-served RFA that the claim has no merit; vigorously pursue the claim; lose the claim; and pay. That cannot be the law. And we will not affirm the award here, for several reasons.

To begin with, as noted above, in August 2015 defendants moved for summary judgment, contending they were not liable, a motion supported by Bennett's declaration. The motion was denied. As to this, we note the rule in malicious prosecution cases, that a denial of summary judgment in the underlying case normally establishes probable cause to sue, thus barring a

18

later malicious prosecution case. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 819–820; *Roberts v. Sentry Life Insurance* (1999) 76 Cal.App.4th 375, 384.)

Bennett notes that she did not move for summary judgment, but it was her declaration that supported the motion. And even if she did not move, there is no question that the possible liability of the partnerships was more attenuated than that of Bennett, who was the transferee from Robertson. So, if those parties lost, as they did, a fortiori would have Bennett.

Beyond that, the RFAs that defendants claim should have been admitted—essentially, that plaintiffs had no case—were vigorously contested at trial, as discussed above. This included that the loans made by Bennett (and the partnerships) did not result in any legitimate claim since they were time barred. And, of course, there was the substantial evidence of badges of fraud—seven of which were, as Judge Swope put it, "established"—which would also support plaintiffs' denial of the claimed innocence of the transfers set forth in the RFAs.

Moreover, defendants' motion for costs of proof fees did not even bother to refer the court to the trial record, but as plaintiffs put it, "merely drew a straight line from the admissions to the statement of decision as supporting their claim for fees." Indeed, defendants' brief, four-page memorandum of points and authorities in support of its motion made absolutely no reference to plaintiffs' evidence. That is, after setting forth the background of the RFAs, the memorandum concluded as follows:

"As the Court well knows, Bennett proved each of the foregoing points and facts, and on such basis was awarded judgment against Plaintiffs [citation]. Plaintiffs had no basis to dispute that Robertson was in fact indebted to Bennett to the tune of over $700,000 at the time the transfers

were made, that the transfers were made in respect of such debt, and that Robertson had the right to prefer Bennett over other creditors pursuant to Civil Code [section] 3432.  Notably, in response to form interrogatory 17.1, Plaintiffs claimed, without citation to any evidence, that Bennett did not accept the transfers from Robertson in satisfaction of debt owed by Robertson to Bennett [citation].  Plaintiffs' denials of Bennett's requests for admission were made in bad faith because prior to making those denials, Bennett had produced promissory notes made by Robertson and the assignment agreement pursuant to which Robertson transferred her interests in the entity defendants to Bennett expressly in respect of the existing debt owed by Robertson to Bennett at that time.  Hence, Plaintiffs' assertion that documents provided by Bennett did not evidence any debt from Robertson to Bennett as set forth in the requests for admission or that Bennett did not accept the transfers in satisfaction of debt owed by Robertson to Bennett were completely and totally false [citation].  Indeed, the documents which Bennett had produced showed precisely the opposite.  Hence, plaintiff Mark Lavine's denials of Bennett's requests for admission were completely without basis and were made in bad faith."

Such an ipse dixit is not persuasive, especially as it makes no reference to plaintiffs' evidence.

As quoted, the party responding to a request for admission may avoid shifting of costs and expenses by establishing that it had a reasonable basis for believing it would prevail on the issue at the time of trial.  (Code Civ. Proc., § 2033.420, subd. (b)(3); see *Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 903–904; *Laabs*, *supra*, 163 Cal.App.4th at p. 1276.)  Measured against the proper statutory standard, plaintiffs' evidence constituted "reasonable ground" for denying the RFAs and proceeding to trial

on the issue.  This included evidence of loans with no collection efforts for over four years; timing of the transfers virtually contemporaneous with Judge Buchwald's finding of Robertson's culpability; and proof of seven badges of fraud, evidence that could reasonably permit one to conclude the value of the assets transferred by Robertson both far exceeded her debt and was done for the express purpose of frustrating plaintiffs' claim to those assets.

Bennett's one-page argument in her respondent's brief ignores this evidence.  It also does not even mention, much less discuss, the three cases plaintiffs cite holding that costs of proof fees were not proper:  *Bloxham v. Saldinger* (2014) 228 Cal.App.4th 729, 753 [property dispute; losing party had reasonable belief in its position by relying among other things on surveyor]; *Carlsen v. Koivumaki, supra*, 227 Cal.App.4th at pp. 903–904 [personal injury case; defendant who lost on summary judgment nevertheless had a good faith belief he could prevail]; *Laabs, supra*, 163 Cal.App.4th at p. 1277 [personal injury case; losing plaintiff had reasonable belief in her position of possible liability of city].  Here, we add a fourth.

## DISPOSITION

The judgment entered on March 8, 2019, is affirmed.  The order entered on May 24, 2019, is reversed to the extent it awards costs of proof attorney fees, and the matter is remanded to the trial court with instructions to strike that award from the order.  Each side shall bear its own costs.

21

_____
Richman, Acting P. J.

We concur:


_____
Stewart, J.


_____
Miller, J.


*Universal Home Improvement, Inc. et al. v. Robertson, et al.* (A157067, A157562)

| | |
|---|---|
| Trial Court: | San Mateo County Superior Court |
| Trial Judge: | Honorable V. Raymond Swope |
| | Honorable Nancy L. Fineman |
| Attorney for Plaintiffs and Appellants Universal Home Improvement, Inc., et al.: | Kastner Kim, LLP, Eric C. Kastner; J. Philip Martin |
| Attorney for Defendants and Respondents Carol Bennett, et al.: | Serlin & Whiteford, LLP, Mark A. Serlin. |